

FILED
JUL 29 2013
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

JTH TAX, INC. d/b/a
LIBERTY TAX SERVICE,

        Plaintiff,

v.

    Civil No. 2:13CV423

BENJAMIN LEE and
B.O.L. GLOBAL, INC.,

        Defendants.

## COMPLAINT

The Plaintiff, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty"), by counsel, and for its Complaint against the Defendants, Benjamin Lee and B.O.L. Global, Inc. (collectively the "Defendants"), states as follows:

### The Parties

1. Liberty is a Delaware corporation with its headquarters and principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454.

2. Benjamin Lee ("Lee") is a citizen of the state of California whose last known address is 3522 Geary Blvd, San Francisco, California 94118.

3. B.O.L. Global, Inc. ("BOL") is a California corporation with its principal place of business at 2830 Geary Blvd., San Francisco, California 94118.

### Personal Jurisdiction

4. Personal jurisdiction over Defendants exists in Virginia because:

    a.    In the process of purchasing and operating a Liberty Tax franchise, Defendants had a substantial and continuing relationship with Liberty's headquarters in Virginia Beach,

1

Virginia, including travel to Virginia to attend training class in Virginia Beach, and the submission of regular reports and other regular contact with Liberty in Virginia Beach, Virginia. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1984).

b.  Defendants' Franchise Agreement with Liberty contains a consent to jurisdiction clause in favor of Virginia. (Franchise Agreement § 15.b. ("Franchise Agreement")) (Attached as Exhibit 1.)

## Subject Matter Jurisdiction

5.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, excluding interest and costs, exceeds $75,000.

## Venue

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this cause of action arose in Virginia Beach and because Defendants' Franchise Agreement contains a forum selection clause specifying venue in this Court. (Franchise Agreement § 15.b.)

## Factual Background

### The Liberty Tax Service System

7.  Liberty is engaged in the business of advertising, promoting and licensing a system of tax preparation centers throughout the United States.

8.  In the January-April 2013 time frame, Liberty had over 4,500 offices nationwide, most of which were franchised.

### Lee's Franchise Agreement

9.  On July 23, 2002, Lee entered into a Franchise Agreement with Liberty for the territory known as CA064.

2

10. The territory was swapped for territory CA154 on March 28, 2006.

11. This agreement expired by its own terms on July 23, 2007.

12. The Franchise Agreement was renewed on November 1, 2007, for a second 5-year term with Lee signing as a sole proprietor.

13. On August 14, 2008, the Franchise Agreement was amended to change the name of the franchisee from Lee to BOL. Lee signed the amendment in his personal capacity and as the CEO of BOL. (Amendment attached as Exhibit 2.)

14. On January 7, 2011, the Franchise Agreement was amended to remove BOL as the franchisee and make Lee the franchise owner. Lee signed in his personal capacity and as CEO of BOL. (Amendment attached as Exhibit 3.)

15. The Franchise Agreement again expired by its terms on November 1, 2012, and Liberty did not renew the Agreement.

16. On information and belief, Lee is also the President of BOL, which is operating a tax preparation business at 2830 Geary Blvd, San Francisco, California 94118. (BOL "Meet Our Team" webpage attached as Exhibit 4.)

17. Lee is listed as the e-file provider for BOL with the IRS. (IRS Authorized e-filer webpage attached as Exhibit 5.)

18. On information and belief, Lee transferred Liberty's customer list and Operations Manual to BOL.

19. On January 18, 2013, BOL sent a letter to former clients stating that it had changed its' name from Liberty Tax but "[t]here has been no change in management and staff" and that "everything else [with the office] remains the same." (BOL Letter attached as Exhibit 6.)

**Termination of Lee's Franchise**

20. On November 1, 2012, Lee's Franchise Agreement expired.

21. On April 25, 2013, Liberty sent a letter of termination stating that Lee was terminated due to breaches of the Franchise Agreement, including, but not limited to his failure to submit reports, failure to pay amounts owing to Liberty, abandonment, failure to renew the franchise agreement, and violation of his in-term non-compete covenant. (Termination letter attached as Exhibit 7.)

22. Upon expiration of the Franchise Agreement, Lee's post-termination duties came into effect. Those duties include the following:

(a) Remove all Liberty signs from all of your offices and other premises; and

(b) Stop identifying yourself as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and cease, and not thereafter commence, use of any of the Marks or any marks which are likely to be confused with the Marks; and

(c) Stop using all literature received from us and other items bearing the Marks; and

(d) Pay to us all amounts owing to us; and

(e) Transfer to us all telephone numbers, listings and advertisements used in relation to the Franchised Business and deliver to us copies of such documents of transfer; and

(f) Deliver to us all copies, including electronic copies, of lists and other sources of information containing the names of customers who patronized the Franchised Business; and

(g) Deliver to us all customer tax returns, files, records and all copies thereof; and

(h) Deliver to us the copy of the Operations Manual and any updates which we loaned to you; and

4

    (i)    Cancel all fictitious name listings which you have filed for use of any of the Marks; and

    (j)    Adhere to the provisions of the post-term covenants not to compete and not to solicit and any other covenant herein that requires performance by you after you are no longer a franchisee.

(Franchise Agreement § 9.)

    23.    Lee also became obligated to comply with the covenants not to compete and not to solicit contained in sections 10.b. and d. of the Franchise Agreement. These covenants provide as follows:

> **Post-Term Covenant Not to Compete.** You agree that for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Bank Products, within the Territory or within twenty-five miles of the boundaries of the Territory granted by this Agreement.
>
> **Covenant Not to Solicit.** You agree that for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, you will not within the Territory or within 25 miles of the boundaries of the Territory, directly or indirectly, solicit the patronage of any person or entity served by any of your prior Liberty offices in the last 12 months that you were a Liberty franchisee, or such shorter time as you were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Bank Products.

(Franchise Agreement § 10. b., d.)

    24.    Finally, Lee became obligated to comply with the confidentiality provisions contained in section 10 of the Franchise Agreement, which provides:

> You agree that you will never, directly or indirectly, during or after the term of this Agreement, divulge to or use for the benefit of any person or entity outside of the Liberty Tax Service system, any information contained in our Operations Manual; any contact, tax return, or other information concerning customers served by your Franchised Business;

5

any information related to Liberty's marketing methods; or any information related to our systems and methods of operation. Information furnished to your employees shall be reasonably limited to that which directly relates to and assists in the proper performance of such employee's duties.

(Franchise Agreement § 10. f.)

**Lee's Breaches of the Franchise Agreement**

25. Lee failed to comply with all of his post-termination duties to Liberty, and he is in violation and continues to violate the covenants not to compete and not to solicit.

26. Lee failed to return the Operations Manual, the customer files and customer list.

27. On information and belief, Lee operates as a certified public accountant at 3522 Geary Blvd., San Francisco, California 94118.

28. On information and belief, Lee is operating BOL and preparing tax returns at 2830 Geary Blvd., San Francisco, California 94118.

29. Upon information and belief, Lee transferred a portion, or all, of the proprietary Liberty client list to individuals outside of the Liberty system.

30. On July 1, 2013, Lee breached the Franchise Agreement by filing a lawsuit against Liberty in the Superior Court of the State of California for the County of San Francisco styled *Benjamin Lee v. JTH Tax, Inc. et al.* (Case No. BCGC-13-532535) ("the California Lawsuit"). (Attached as Exhibit 8.)

31. The Franchise Agreement that Lee signed contained a Jurisdiction and Venue provision.

32. The Jurisdiction and Venue provision states:

> In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District in Norfolk, Virginia), or if neither federal subject matter or diversity exists, in the city or

6

county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

(Franchise Agreement § 15.b)

**Defendants' Promissory Notes**

33. To finance the purchase of the franchises and for operating capital, the Defendants executed four promissory notes payable to Liberty.

34. Defendants executed Promissory Note No. 2527-AR-06 dated September 8, 2009, in the amount of $17,146.33 signed by "BOL Global, Inc." as maker and "Benjamin Lee" as guarantor. To date $17,146.33 of the principal and $4,519.04 of the interest is unpaid. (Attached as Exhibit 9.)

35. Defendants executed Promissory Note No. 2527-RO-08 dated September 8, 2009, in the amount of $15,773.26 signed by "BOL Global, Inc." as maker and "Benjamin Lee" as guarantor. To date $15,773.26 of the principal and $6,829.85 of the interest is unpaid. (*Id.*)

36. Defendants executed Promissory Note No. 2527-AR-02 dated January 18, 2011, in the amount of $27,589.27 signed by "Benjamin Lee" as maker. To date $27,589.27 of the principal and $3,696.95 of the interest is unpaid. (Attached as Exhibit 10.)

37. Defendants executed Promissory Note No. 2527-RO-01 dated January 18, 2011, in the amount of $38,868.18 signed by "Benjamin Lee" as maker. To date $38,868.18 of the principal and $10,533.30 of the interest is unpaid. (*Id.*)

38. Termination of the Franchise Agreement was also a default under the Promissory Notes.

39. By their terms, the Promissory Notes provided that failure to pay amounts as due constituted a default.

40. Upon default, Liberty was entitled to accelerate the entire amount due under each promissory note, as provided by the terms of each promissory note. "If an event of default shall occur or if the undersigned shall fail to pay this Note in full at maturity, the entire unpaid balance of this Note and all accrued interest shall become immediately due and payable, at the option of Liberty, without notice or demand to any Obligor." (*See* Exs. 9 and 10.)

41. As such, all amounts owed under the Promissory Note became immediately due and payable.

42. Currently, Defendants' outstanding balance owed to Liberty under the Promissory Notes is $124,956.18.

43. Defendants also owe Liberty $31,501.91 in unpaid accounts receivable. (Liberty Accounting Summary attached as Exhibit 11.)

44. Defendants have an outstanding balance of $156,458.09 owed to Liberty. (*Id.*)

## COUNT I
## BREACH OF FRANCHISE AGREEMENT
## (Lee only)

45. Liberty repeats and re-alleges paragraphs 1-44 as if fully set forth herein.

46. Lee became subject to the post-termination obligations under his Franchise Agreement, when the Franchise Agreement was terminated on April 25, 2013.

47. Lee breached the CA154 Franchise Agreement with Liberty by failing to adhere to the post-termination duties contained in sections 9 and 10 of the Franchise Agreement in the ways specified above, as well as such other and further breaches as investigation and discovery may reveal.

48. Lee also breached the Franchise Agreement by filing his lawsuit in violation of the forum selection clause in the Franchise Agreement.

49. Liberty suffered damages and irreparable harm (from the non-monetary breaches), and will continue to suffer damages and irreparable harm because of such breaches, unless Lee, and all of his agents, employees and all other persons in active concert or participation with him, are enjoined from further breaches by this Court.

50. Liberty suffered damages because Lee failed to pay all monies owed to Liberty, including the accounts receivable.

## COUNT II
## BREACH OF PROMISSORY NOTE
## (All Defendants)

51. Liberty repeats and re-alleges paragraphs 1-50 as if fully set forth herein.

52. The Defendants breached each of the Promissory Notes by failing to pay all amounts due.

53. The total amount past due and owing to Liberty on the Promissory Notes is $124,956.18

54. Pursuant to the terms of the Promissory Notes, Liberty is entitled to recover the principal amounts, plus interest at 12% per annum, and Liberty's attorneys' fees and costs incurred in enforcing such notes.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS (Va. Code § 59.1-336 *et seq.*)
## (All Defendants)

55. Liberty repeats and re-alleges paragraphs 1-54 as if fully set forth herein.

56. Liberty's confidential customer lists are trade secrets, which contain confidential taxpayer information. In addition, Liberty's Operations Manual contains confidential information about the Liberty Tax system and also constitutes a trade secret.

57. Liberty takes reasonable steps to preserve the secrecy of the trade secrets,

including the provisions of the Franchise Agreement that require all customer tax returns, files, records and copies to be returned to Liberty upon termination of the franchise relationship.

58. The Defendants used the franchise relationship with Liberty to acquire Liberty's customer lists.

59. Upon information and belief, and without Liberty's consent, Lee transferred the Liberty client list to BOL, thereby misappropriating Liberty's trade secrets.

60. The Defendants' misappropriation of Liberty's trade secrets was willful and malicious because Lee knew that upon termination of the Franchise Agreement he was required to return the customer lists and other confidential information to Liberty.

61. Liberty is entitled to an award of its costs, attorneys' fees and punitive damages, pursuant to Va. Code §§ 18.2-500 and 59.1-338.1.

## COUNT IV
## CIVIL CONSPIRACY
## (All Defendants)

62. Liberty repeats and re-alleges paragraphs 1-61 as if fully set forth herein.

63. Upon information and belief, Defendants have acted in concert, agreed, associated, mutually undertaken and combined together to injure Liberty's business.

64. Defendants are acting together to breach Lee's post-termination duties and covert Liberty's customers.

65. Defendants' civil conspiracy has caused and continues to cause, harm and irreparable harm to Liberty.

## COUNT V
## BUSINESS CONSPIRACY (Va. Code. § 18.2-499, et seq.)
## (All Defendants)

66. Liberty repeats and re-alleges paragraphs 1-65 as if fully set forth herein.

67. Upon information and belief, Defendants have acted in concert, agreed, associated, mutually undertaken and combined together to injure Liberty's business.

68. Defendants are acting together to breach Lee's post-termination duties and covert Liberty's customers.

69. Defendants' actions constitute a conspiracy in violation of Va. Code Ann. § 18.2-499, *et seq.*, and they have caused, and continue to cause, harm and irreparable harm to Liberty.

WHEREFORE, in consideration of the foregoing, plaintiff Liberty Tax Service respectfully prays for the following relief:

1. That it be granted a judgment for damages in the amount of $400,000.00 in its favor against Lee for the breaches of the Franchise Agreement including any attorneys' fees in defending the California action and unpaid accounts receivable;

2. That it be granted a judgment for damages in the amount of $124,956.18 against Defendants for the breach of the Promissory Notes;

3. That it be granted its costs and attorney's fees incurred under the Promissory Notes;

4. That it be granted its actual damages, unjust enrichment, punitive damages, and attorneys' fees and costs for the Misappropriation of Trade Secrets;

, 5. That it be granted treble damages, lost profits, and attorneys' fees and costs under the Civil Conspiracy and Business Conspiracy claims;

6. That a temporary injunction, later to be made permanent, be granted compelling Lee and all his agents, employees and all other persons in active concert or participation with him to:

    a. Stop identifying themselves as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and cease, and not thereafter commence, use of any of the Marks or any marks that are likely to be confused with the Marks;

    b.    Stop using all literature received from Liberty and other items bearing the Marks;

    c.    Deliver to Liberty all customer lists and information;

    d.    Deliver to Liberty all customer tax returns, files, records, and copies;

    e.    Deliver to Liberty the copy of the Operations Manual and any updates which Liberty loaned to the Defendants;

    f.    Transfer to Liberty all telephone numbers, listings and advertisements used in the former Liberty offices and deliver to Liberty copies of such documents of transfer;

    g.    Never divulge or use for the benefit of anyone outside the Liberty system any information concerning customers served by the prior Liberty franchised business;

    h.    Not directly or indirectly prepare or electronically file income tax returns or offer bank products within Liberty Territory CA154 or within 25 miles of the boundary of the territory for two years from the date of the entry of this injunction order; and

    i.    Not directly or indirectly solicit the patronage of any former Liberty customer served by Lee's prior Liberty offices during the time period April 25, 2012 through April 25, 2013, for the purpose of offering tax preparation, electronic filing or bank products, within former Liberty Territory CA154 or within 25 miles of the boundaries of such territory, for two years from the date of the entry of the injunction order.

7. Grant Liberty such other and further relief as this Court may deem just and proper.

JTH Tax, Inc. d/b/a Liberty Tax Service

By: _____
Of Counsel

David A. Lindley, Jr., Esq. (VSB # 71215)
Corporate Counsel
JTH Tax, Inc. d/b/a Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454
Telephone number: 757-493-8855
Fax number: 800-880-6432
Email: david.lindley@libtax.com

By: _____
Of Counsel

Christopher D. Davis, Esq. (VSB #74809)
Corporate Counsel
JTH Tax, Inc. d/b/a Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454
Telephone number: 757-493-8855
Fax number: 800-880-6432
Email: chris.davis@libtax.com